**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NFIP, LLC, et al.,** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 2:21-cv-01300-MSG** |
| | : | |
| **NIFTY FIFTYS also T/A NIFTY FIFTYS** | : | |
| **SODA FOUNTAIN, *ET AL*.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

<u>**MEMORANDUM OPINION**</u>

**Goldberg, J.**                                                                          **August 12, 2021**

Plaintiffs NFIP, LLC, The Hamburger Museum Inc. T/A Nifty Fifty's, and Nifty Fifty's Franchising, Inc. (collectively, "Plaintiffs") bring this action for infringement of a federally-registered trademark under the Lanham Act against Defendants Nifty Fiftys T/A Nifty Fiftys Soda Fountain, Omar Santos Bracamontes, and John Does Nos. 1 through 5 (collectively, "Defendants"). Before me is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) arguing that I lack personal jurisdiction because Defendants are citizens of Washington State.[1]   For the following reasons, I will grant Defendants' motion and dismiss this case for lack of personal jurisdiction.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   <u>Facts Alleged in the Complaint</u>

Plaintiffs' six-count Complaint asserts claims of federal service mark infringement, unfair

---

[1]       The Defendants in this case filed a Motion to Dismiss under FRCP 12(b)(6) however, it appears that they intended to file pursuant to 12(b)(2). In their Motion, they never argue a failure to state a claim under 12(b)(6) and their Motion deals exclusively with the issue of personal jurisdiction.

competition by false designation of origin by trade name and service mark infringement, and trade name or service mark dilution under the Lanham Act. Plaintiffs also assert Pennsylvania state law claims of injury to business reputation and dilution, unfair competition, palming off, trade name, and trademark infringement.  Plaintiffs seek injunctive relief, damages and attorneys' fees.

The following facts, viewed in the light most favorable to Plaintiffs, are taken from the Complaint:

- Plaintiff NFIP, LLC ("NFIP") is a Pennsylvania limited liability company that is the exclusive registered owner of the mark "NIFTY FIFTY'S" for restaurant services. Plaintiff, The Hamburger Museum Inc., is a Pennsylvania corporation and is the owner and operator of five restaurants in Pennsylvania and New Jersey. The Hamburger Museum, Inc's restaurants are licensed by NFIP to use the name NIFTY FIFTY'S and offer dining services associated with a 1950s theme. Plaintiff, Nifty Fifty's Franchising, Inc., is a Pennsylvania corporation that is exclusively licensed by NFIP to sell Nifty Fifty's franchises nationwide. (Compl. ¶¶ 5, 6, 7, 8.)

- Plaintiffs assert that they acquired ownership of the mark "Nifty Fifty's" on May 10, 1988 by federal trademark and service mark registration. (Compl. ¶ 27.)

- Plaintiffs allege that Defendants are the owners and operators of a 1950's-themed restaurant in Port Townshend, Washington that uses the name "Nifty Fiftys Soda Fountain" without license or authorization. (Compl. ¶¶ 9, 10.)

- Defendants are allegedly marketing their services online and have advertised online through internet directories that employ the mark "Nifty Fifty's."  At various points, both directly and through legal representatives, Plaintiffs have informed Defendants that they must cease and desist from all usage of the Nifty Fifty's mark.  Defendants, however, have not complied and continue to use the mark in connection with their restaurant. (Compl. ¶¶ 20, 21, 22, 23, 24, 25.)

- Plaintiffs allege instances of actual confusion on the part of consumers who have attempted to obtain discounts at their restaurants using coupons issued by the allegedly infringing Defendants. (Compl. ¶ 1.)

- Plaintiffs claim that Defendants' restaurant is causing harm to its reputation as a famous mark and is interfering with their ability to sell franchises nationally. (Compl. ¶ 46.)

B.    Facts Set Forth in Parties' Affidavits

In their briefing regarding the Motion to Dismiss for Lack of Personal Jurisdiction, the

parties provide evidence of the following facts:[2]

- Plaintiffs allege that they first learned of Defendants' restaurant prior to 2016 when customers presented unauthorized coupons. These customers claimed they had obtained these coupons online by searching for Nifty Fifty's on the web. Customers would demand that Plaintiffs honor the discounts and then become disgruntled when Plaintiffs refused to do so. (Pls.' Aff. of Leo McGlynn ¶¶ 4, 5, 6.)

- In 2016, Plaintiffs investigated the coupons and found that they had originated at Defendants' restaurant which was then accessible at the internet web address of www.niftyfiftyspt.com. (Id. at ¶¶ 6, 8.)

- Plaintiffs aver that they phoned Defendants and warned them that they were using a federally registered mark without authorization or license and further usage would prompt legal action. After this initial call, Plaintiffs recall that Defendants promised to change the name of their business rather than face legal repercussions. Plaintiffs also sent a formal cease-and-desist letter on June 1, 2016. Defendants deactivated their website and Plaintiffs claim that the unauthorized coupons disappeared for a few years. (Id. at ¶ 7.)

- Plaintiffs aver that Defendants' have inflicted harm on their good reputation in the Pennsylvania region. They assert that negative reviews intended for Defendants' restaurant have been posted by confused customers on third-party rating websites and social media. (Id. at ¶ 11.)

- Plaintiffs aver that Defendants have "likely engaged" an Instagram model to conduct a photoshoot at their restaurant, posting the images and tagging their location on social media. Plaintiffs further aver that this model "purposely" tagged her images taken at Defendants' restaurant with Plaintiffs' logo in an intentional effort to associate with the latter's business to generate "positive publicity. . . at the expense of our ratings and customer goodwill here in our area." (Pls.' Aff. of Jacqueline McGlynn ¶¶ 13, 14.)

- Defendants aver that they have owned and operated their single restaurant named Nifty Fiftys Soda Fountain in Port Townshend, Washington since 1999. They aver that they have never owned or maintained any other locations or branches elsewhere. They aver that they have never had a place of business in Pennsylvania and that they have no agents or representatives in this state. Defendants further aver that they are not licensed to do business, are not liable for taxes, and do not advertise in Pennsylvania. (Defs.' Decl. of Omar Santos Bracamontes ¶¶ 3, 4, 5, 6.)

---

[2]    "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies.  Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Patterson by Patterson v. F.B.I., 893 F.2d 595, 603–04 (3d Cir. 1990).

- Defendants aver that they do not maintain any website, social media page, or otherwise support an online presence. (Id. at ¶ 8.)

- Defendants aver that they never hired anyone to promote their restaurant on social media. They aver that they do not know the woman identified by Plaintiffs as a model in a photoshoot taking place at their restaurant. (Defs.' Decl. Supp. Defs.' Reply ¶ 3.)

- Defendants contend that did not issue the online coupon Plaintiffs submitted as Exhibit A. (Id. at ¶ 2.)

- Defendants aver that their June 2020 coupons are the only ones they have ever released. These coupons were distributed at local grocery stores and were clearly marked for exclusive use at the Defendants' single restaurant in Washington. (Defs.' Decl. of Omar Santos Bracamontes ¶ 7.)

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may seek dismissal of a complaint for lack of personal jurisdiction. "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 144 n.1 (3d Cir. 1992). A plaintiff may do so through affidavits or jurisdiction competent evidence that show sufficient contacts with the forum state to establish personal jurisdiction. De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).  Such contacts must be established with "reasonable particularity," but need only amount to a *prima facie* case in favor of personal jurisdiction.  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).  If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable.  De Lage Landen Fin. Servs., 2008 WL 4822033, at *3 (citing Carteret Sav. Bank v. Shushan, 954 F.2d at 150).

4

III.    DISCUSSION

The central issue in this case is whether I have personal jurisdiction over the Defendants who claim that their single, standalone restaurant in Washington has no minimum contacts with Pennsylvania. Defendants argue that their business has no contacts of any kind with Pennsylvania: they employ no agents in state, are not liable for state taxes, and do no advertising in the forum state. (Defs.' Mot. ECF No. 17 ¶¶ 6, 8). Furthermore, Defendants claim they do not maintain any internet or social media presence for the restaurant whatsoever. (Id. at ¶ 8). They also deny engaging in any kind of national advertising campaign and assert that they have never reached out to develop a customer base outside of their immediate community of Port Townsend, Washington. (Id. at ¶ 8).

Under Federal Rule of Civil Procedure 4(k)(1)(A), federal courts sitting in diversity can only exercise jurisdiction over a non-resident defendant to the extent permitted by the state's forum laws. See Martin v. Citizens Fin. Group, Inc., No. 10-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010). Plaintiffs have filed this action in the forum state of Pennsylvania. This Commonwealth's long-arm statute allows for Pennsylvania courts to exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); see Mellon Bank, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment."). Therefore, a court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause. Mellon Bank, 960 F.2d at 1221. Pursuant to these constitutional considerations, physical presence within the forum is not

required to establish personal jurisdiction over a nonresident defendant. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Instead, personal jurisdiction may be based on either a defendant's general contacts ("general jurisdiction") or his specific contacts ("specific jurisdiction") with the forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

 Plaintiffs agree that this Court does not have general jurisdiction over Defendants and contend only that the exercise of specific personal jurisdiction is proper.

 Specific jurisdiction exists where the cause of action is related to or arises out of the defendant's contacts with the forum. IMO Indus., 155 F.3d at 259 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). For the exercise of specific jurisdiction to comply with the Due Process Clause, a plaintiff must satisfy a three-part test. Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. 07-438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008). First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Second, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros Nacionales, 466 U.S. at 414. Third, the reviewing court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (enumerating the three elements of specific jurisdiction).

 In order for a defendant's contacts with the forum to be sufficient, they must be intentional, with the defendant purposefully availing itself to the privilege of conducting business in the state. See J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 880 (2011). Requiring that a defendant purposefully avail himself of doing business in the state ensures that he will not be haled into court

in a state where his only contacts are "'random,' 'fortuitous,' or 'attenuated.'" <u>Burger King</u>, 471 U.S. at 475 (1985) (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984)).

Pennsylvania's long-arm statute includes what is known as a "tort out / harm in" provision which can extend personal jurisdiction to tortfeasors who "caus[e] harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa. Cons. Stat. § 5322(a)(4). These tortious actions need not be intentional to merit inclusion under this statute. <u>Pennzoil Prods. Co. v. Colelli & Assocs., Inc.</u>, 149 F.3d 197, 201 (3d Cir. 1998). But even if the long-arm statute extends to an out-of-state tortfeasor, a due process analysis demonstrating minimum contacts with the forum state still must be applied. <u>Id.</u>

In this Circuit, trademark infringement actions require "'something more' than the infringement itself to show that the non-resident defendant directed its activity towards the forum." <u>Ameripay, LLC v. Ameripay Payroll, Ltd.</u>, 334 F. Supp. 2d 629, 633 (D.N.J. 2004). "The defendant must have purposely availed itself of the forum by targeting its website there, knowingly conducting business with forum residents through the website, or by non-internet contacts, such as communications, business trips, or contracts in the forum." <u>Id.</u> Generally, courts in this Circuit will extend personal jurisdiction in trademark infringement cases if a plaintiff can establish even a single instance of purposeful availment of the forum state such one shipment of infringing goods into the forum state. <u>See e.g., One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.</u>, 987 F. Supp. 317 (D.N.J. 1997) (holding that the New Jersey court could establish personal jurisdiction over a Florida defendant in a trademark infringement action because defendant had shipped infringing goods into the state); and <u>Gentex Corp. v. Abbott</u>, 978 F. Supp. 2d 391 (M.D. Pa. 2013) (holding that personal jurisdiction over  the dispute arose from the defendant's soliciting business and shipping infringing goods in the forum state).

Here, while Defendants' unlicensed use of the mark "Nifty Fifty's" may entitle Plaintiffs to a cause of action under the Lanham Act, this alone is not sufficient to establish personal jurisdiction over an out-of-state defendant in a trademark infringement action. Without "something more" to demonstrate that Defendants aimed their tortious conduct at the forum state through solicitation of sales or shipments of infringing goods, I cannot find that they have the requisite minimum contacts for extending jurisdiction.

Defendants are the owner and operators of a single restaurant in Washington. Nothing in the Complaint or the evidence submitted by Plaintiff alleges that the Defendants ship goods into Pennsylvania or otherwise intentionally solicit customers outside of their home state. While customers have attempted to use Defendants' coupons at Plaintiffs' establishments, there is no evidence that these coupons were ever sold in Pennsylvania or offered to customers in the forum state. Further, even though the tort out / harm in provision of the long arm statute in Pennsylvania would extend to these Defendants, a standard due process analysis does not support personal jurisdiction in this case and fails on the first prong of "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259 (citing Burger King, 471 U.S. at 474 (1985)). Moreover, Plaintiffs fail to present any facts that would demonstrate Defendants attempted or executed even a single sale in Pennsylvania. Simply put, Defendants are selling a dining experience that is fixed to its single, Washington location.

In an effort to establish personal jurisdiction here, Plaintiffs argue that the requisite minimum contacts are satisfied through: (1) negative customer reviews about Defendants' restaurant online that are erroneously tagged with Plaintiffs' business name; (2) Instagram posts by a model used to promote Defendants' restaurant; and (3) Defendants' disregard of the cease-

and-desist requests sent by Plaintiffs, putting Defendants on notice that they were infringing a Pennsylvania business. For the following reasons, I find none of these arguments persuasive.

First, customer reviews posted on third-party websites do not constitute purposeful acts on the part of the Defendants such as would be necessary for a due process analysis. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Consumers mistakenly posting online reviews of Defendants' restaurant under Plaintiffs' name cannot establish the efforts of Defendants to purposely avail themselves of conducting business within the forum State. While perhaps indicative of actual confusion for purposes of an infringement claim, these types of reviews do not satisfy a minimum contacts analysis.

Even if these reviews were negative and wrongly harmed Plaintiffs' reputation in Pennsylvania, that alone would not create minimum contacts with the forum state: "There is a critical difference between an act which has an effect in the forum and one directed at the forum itself." Surgical Laser Techs., Inc. v. C.R. Bard, Inc., 921 F. Supp. 281, 285 (E.D. Pa. 1996). Here, while Defendants' alleged act of infringement may have an effect by way of generating negative reviews erroneously posted to third-party sites, I cannot presume that Defendants had any control over these negative reviewers such that the conduct could be described as directing an act at the forum state.

Second, I find that minimum contacts were not satisfied by the Instagram model who posted her photoshoot conducted at Defendants' restaurant. While Plaintiffs have submitted a

sworn affidavit from their marketing director, complete with screenshots of tagged photographs on Instagram at the location of the Defendants' restaurant to demonstrate actual confusion, this speaks to the merits of the infringement claim.  (Pls.' Resp. to Mot. to Dismiss, ECF No. 17-1). It does not, however, establish that the Defendants purposefully availed themselves of doing business in Pennsylvania. See J. McIntyre Machinery, Ltd. 564 U.S. at 880 (2011). In fact, Plaintiffs fail to present any evidence that the model who tagged Defendants' restaurant in her promotional images using Plaintiffs' logo was actually hired by Defendants at all. (Pls.' Resp. to Defs.' Mot., ECF No. 17-1 at ¶ 13). Instead, the affidavit merely offers the conclusory claim that the model was "likely engaged to do a photoshoot promoting Niffy [sic] Fifty's of Port Townshend." Id. This affidavit further concedes that the Defendants' purported website alleged by the Complaint is no longer maintained and operational.[3] Id. Instead, the affidavit avers that it is the Defendants' advertisements and reviews on third-party websites that are now causing "substantial confusion" in Pennsylvania. Id. But, these third-party websites are not controlled by Defendants and are not demonstrative of their soliciting business in the forum state.

Lastly, Plaintiffs' cease-and-desist order and phone calls demanding the same from Defendants are not sufficient to establish minimum contacts because they constitute unilateral activity on Plaintiffs' part. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Walden v. Fiore, 571 U.S. 277, 286 (2014).

---

[3]     Even if Defendants were currently operating and maintaining an internet presence, that would not be sufficient to establish personal jurisdiction in Pennsylvania. "'[T]he mere operation of a commercially interactive website' does not subject [a defendant] to jurisdiction anywhere in the world.  For the Court to exercise personal jurisdiction over [a defendant] for its Internet-based activities, there must be evidence of some contacts in addition to the fact that [a defendant's] website is accessible in the forum state." Endless Pools,Inc. v. Wave Tec Pools, Inc., 362 F. Supp. 2d 578, 585 (E.D. Pa. 2005) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 453 (3d Cir. 2003)).

Plaintiffs press that their phone calls and cease-and-desist letter are sufficient to establish personal jurisdiction because Defendants continued to use the allegedly infringing mark after being put on notice to stop. (Pls.' Resp. to Defs.' Mot., ECF No. 17 at 9). As a result, Plaintiffs argue that the Defendants meet the requirements for establishing personal jurisdiction over a non-resident defendant as set forth in Calder v. Jones, 465 U.S. 783 (1984). This so-called "Calder Effects Test" requires that a defendant (1) commit an intentional tort that is (2) aimed at the forum state and (3) causes harm that the defendant knows will be suffered in the forum state. Id. To meet the requirements of this test, Plaintiffs analogize the facts of their case to a suit from the District of Nebraska where jurisdiction was deemed appropriate over a non-resident, infringing restaurant because the defendant was warned in a cease-and-desist letter to stop use of plaintiff's mark and continued to do so regardless. Amenta v. Romeo's Pizza, Inc., No. 11-227, 2012 WL 1030151 *1 (D. Neb. Mar. 27, 2012). The infringing restaurant's continued use of the mark after being put on notice with a cease-and-desist was deemed sufficient to meet the second requirement of the Calder test for aiming tortious activity at the forum state in that case.

Amenta, however, is not analogous to the facts of this case. There, the defendant continued to use the infringing name and also operated a website that included interactive features allowing customers anywhere in the country to download coupons. Id. The website also enabled the defendant business to build a mailing list, interact on social media, and offer franchise opportunities. Id. Here, by contrast, after the cease-and-desist letters/calls, Defendants deactivated their website entirely and are now searchable exclusively through third-party internet activity. While Defendants did not stop using the allegedly infringing mark at their one-location restaurant in Washington, they did not continue to solicit business online in the direct manner employed by the defendants in Amenta.

Given all of the above, I find that Plaintiffs have failed to meet their burden demonstrating that the Defendants committed any acts that reached into the forum state so as to establish specific personal jurisdiction in this case.

**IV.    CONCLUSION**

For the foregoing reasons, I will dismiss this action for lack of specific personal jurisdiction over the Defendants.  An appropriate Order follows.